# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **FARM CREDIT SERVICES OF AMERICA, FLCA,**<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>**KATHY MENS,**<br><br>　　　　　　Defendant. | 8:19CV14<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 4, and the Motion for Expedited Discovery, ECF No. 6, filed by Plaintiff Farm Credit Services of America, FLCA ("Farm Credit"). Farm Credit notified Defendant Kathy Mens of the hearing, and counsel for Mens entered an appearance. The parties appeared before the Court, through counsel, on January 18, 2019. The parties agreed that the Motion for Temporary Restraining Order could be consolidated with the hearing on Farm Credit's Motion for Preliminary Injunction. After being heard on the matter, and for the reasons stated below, the Court will grant the Motion for Preliminary Injunction. The Motion for Expedited Discovery will be denied as moot.

## BACKGROUND

The following is a summary of the facts alleged in Farm Credit's verified Complaint, which were not disputed by counsel for Mens at the time of the hearing and which will be accepted as true for purposes of the pending Motion for Temporary Restraining Order and Preliminary Injunction only.

Farm Credit provides financial services to ranchers and farmers in the Midwestern United States, primarily Iowa, Nebraska, South Dakota and Wyoming.  Farm Credit's services include private hail insurance, federally reinsured multiple peril crop insurance, revenue protection, yield protection, livestock insurance, named peril insurance and any other current or future crop insurance plans issued under the authority of the Federal Crop Insurance Act, 7 U.S.C. §1508 et seq. (collectively "Crop Insurance").

Farm Credit employed Mens from December, 20, 2012, through May 17, 2018, as an Insurance Officer. Her duties included marketing crop insurance to existing Farm Credit customers (the "Customers") as well as identifying and soliciting new crop insurance customers on behalf of Farm Credit.  As part of her duties, Mens learned the Customers' needs, history, financial risk profile, and business operations to sell and service appropriate crop insurance coverage to the Customers.  A critical part of Mens's job duties was to develop and maintain strong personal relationships with the Customers.

Although Mens was an experienced insurance agent prior to her employment with Farm Credit, Farm Credit continued to provide Mens with training, supported her sales efforts, paid her license, and provided her with access to the Customers. Farm Credit also provided its brand on her business cards, correspondence, website and various company-produced marketing material. Farm Credit also financed dinners, lunch, promotional items, and other activities designed to promote Mens's relationships with the Customers.

Farm Credit alleges that its reputation, brand, and support played an essential role in the Customers' trust in and loyalty to Mens. Farm Credit permitted Mens to be the

primary contact with the clients with whom she worked, and other insurance specialists at Farm Credit were not permitted to be the direct liaison.

As part of its efforts to maintain its customer good will and confidentiality of its property and other information, and as a condition of access to this information, Farm Credit required all insurance specialists and similarly situated employees, including Mens, to execute the Contract which provided in relevant part:

> **2.    NONSOLICITATION OF CUSTOMERS**. For a period of two (2) years following the termination (voluntary or involuntary, for any reason or no reason) of Employee's employment with FCSAmerica and/or Frontier, Employee shall not, seek or accept employment with, and will not call on or solicit the business of, or sell to, or service (directly or indirectly, on Employee's own behalf or in association with or on behalf of any other individual or entity), any of the customers of FCSAmerica and/or Frontier with whom Employee actually did business and had personal contact while employed by FCSAmerica or Frontier, except to the extent such activities are unrelated to and not competitive with the business, products or services that Employee offered or provided on behalf of FCSAmerica or Frontier and cannot adversely affect the relationship or volume of business that FCSAmerica and/or Frontier have with such customers.
>
> **3.    NONSOLICITATION OF EMPLOYEES.** For a period of two (2) years following the termination (voluntary or involuntary, for any reason or no reason) of Employee's employment with FCSAmerica and/or Frontier, Employee shall not (on Employee's own behalf or in association with or on behalf of any other individual or entity other than FCSAmerica or Frontier), seek, recruit or otherwise solicit, for employment any then current employee of FCSAmerica or Frontier with whom Employee actually worked and had personal contact with while employed by FCSAmerica and/or Frontier, except for a position, engagement or business opportunity that is not competitive with the business, products or services that Employee (or any recruited or otherwise solicited employee) offered or provided on behalf of FCSAmerica or Frontier and cannot adversely affect the relationship or volume of business that FCSAmerica and/or Frontier have with their customers.
>
> **4.    NONDISCLOSURE OF CONFIDENTIAL INFORMATION.** During the term of Employee's employment with FCSAmerica and Frontier and following the termination (voluntary or involuntary, for any reason or no reason) of Employee's employment with FCSAmerica and/or Frontier, Employee shall not use for any purpose or divulge, disclose, or communicate to any person or entity, in any manner whatsoever, any

> Confidential Information acquired during or as a result of Employee's employment with FCSAmerica and/or Frontier. Employee agrees that the Confidential Information is proprietary to FCSAmerica or Frontier and is owned solely by FCSAmerica or Frontier, and that the disclosure thereof would cause irreparable harm and damage to the business of FCSAmerica and/or Frontier. Employee will not access, copy, download, transmit, or reproduce any Confidential Information (whether stored electronically or otherwise) for any purpose other than furthering the business interests of FCSAmerica and Frontier. Employee will never use or disclose Confidential Information (even following the termination of employment) for any purpose other than furthering the business interests of FCSAmerica or Frontier. Upon termination (voluntary or involuntary, for any reason or no reason) of Employee's employment with FCSAmerica and/or Frontier, Employee shall immediately return to FCSAmerica and Frontier, respectively all data, materials and other documents containing or related to any Confidential Information belonging to each respectively.

Contract at 1-2; ECF No. 1-1, Page ID 11.

The Contract obligated Mens not to use any confidential information or other property of Farm Credit for any purpose other than the work of Farm Credit. Mens was obligated to return to Farm Credit all of its property at the time she ended her services with Farm Credit. Contract at 2; ECF No. 1-1. Mens agreed that the exclusive venue for trial would be in state or federal court in Douglas County, Nebraska, and that the substantive law of Nebraska would govern the claim.

On or about May 17, 2018, Mens's employment with Farm Credit ended. At the hearing on Farm Credit's Motions, Farm Credit presented evidence that after the termination of Mens's employment, on a date uncertain, she became employed with a competing company, FBN, in which she held a similar position to that which she held with Farm Credit. In the time since her employment with Farm Credit ended, Mens has persuaded at least four Customers with whom she did business and had personal contact at Farm Credit to cancel their Crop Insurance through Farm Credit and purchase Crop Insurance through FBN.

On January 11, 2019, Farm Credit filed this action alleging that Mens breached the Contract. Farm Credit seeks preliminary and permanent injunctive relief, as well as damages to the extent they can be measured.

**DISCUSSION**

**I. Motion for Temporary Restraining Order/Preliminary Injunction**

Courts in the Eighth Circuit apply the factors set forth in *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc), when determining whether to issue a preliminary injunction or temporary restraining order. Those factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* "No single factor is determinative." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 974 (D. Neb. 2008). "A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). Based on the evidence, the Court concludes that the factors weigh in favor of a preliminary injunction.

***A. Likelihood of Success on the Merits***

"In deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (quoting *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir.1995)). With respect to this factor, it is not necessary for the movants to prove they are more likely than not to prevail, the movants "need only show a

5

reasonable probability of success, that is, a fair chance of prevailing" on the merits. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013); *Dataphase*, 640 F.2d at 113. To demonstrate success on the merits, Farm Credit must show that the covenant not to compete is valid and enforceable and that Mens breached the agreement.

### 1. Validity of Contract

In determining whether a covenant not to compete is valid, a court considers whether the restriction is (1) reasonable in the sense that it is not injurious to the public, (2) not greater than is reasonably necessary to protect the employer in some legitimate interest, and (3) not unduly harsh and oppressive on the employee. *Aon Consulting, Inc. v. Midlands Fin. Benefits, Inc.*, 748 N.W.2d 626, 638 (Neb. 2008) (citing *Mertz v. Pharmacists Mut. Ins. Co.*, 625 N.W.2d 197 (Neb. 2001).

Farm Credit has demonstrated at this stage that the factors support the validity of the Contract. First, there is no indication that the Contract is injurious to the public. The Contract purports to protect Farm Credit's business good will and its ability to provide service to its customers.

Second, Farm Credit has shown that it has a legitimate business interest requiring protection. "Protection of customer goodwill against appropriation by an employee is, generally, recognized as an employer's valid interest." *Am. Sec. Servs., Inc. v. Vodra*, 385 N.W.2d 73, 79. (Neb. 1982). "A promise to forbear to solicit such customers and to deprive the employer of the advantage of that goodwill is reasonable." *Vodra*, 385 N.W.2d at 79 (citing Corbin on Contracts § 1394). "Where an employee has substantial personal contact with the employer's customers, develops good will with such customers, and siphons away the goodwill under circumstances where the goodwill properly belongs to

6

the employer, the employee's resultant competition is unfair, and the employer has a legitimate need for protection against the employee's competition." *Prof'l Bus. Servs., Co. v. Rosno*, 589 N.W.2d 826, 831 (Neb. 1999). Mens worked for Farm Credit for over five years and had been Farm Credit's primary contact with many of Farm Credit's Customers during that time. Farm Credit placed considerable trust in Mens to further Farm Credit's relationships with its clients. Farm Credit had a legitimate interest in protecting those relationships.

Finally, the Contract is not unduly harsh on Mens. Nebraska courts consider several facts to determine whether a restriction on competition is unduly harsh. These factors include (1) the risk to the employer of losing customers, (2) the extent of participation in retaining customers, (3) the good faith of the employer, (4) the nature and extent of the business position Mens held with Farm Credit, (5) the employee's training, health, education, and needs of her family, (6) the existence of sources of general knowledge pertaining to the identity of customers, (7) current conditions of employment, (8) the necessity of changing her occupation or residence, (9) whether the restraint is necessary to protect a legitimate interest, and (10) the inequality of bargaining power. *See C&L Indus., Inc. v. Kiviranta*, 698 N.W.2d 240, 250 (Neb. App. 2005) (citing *Vodra*, 385 N.W.2d at 80).

The Court has considered these factors and concludes that the Contract is not unduly harsh. Farm Credit has shown that it is at risk of losing a substantial amount of Crop Insurance business from the Customers that Mens worked with at Farm Credit, including the four customers specifically alluded to in evidence at the hearing. Further, there is no evidence that Mens would be severely disadvantaged if she is prevented from

7

contacting her prior customers. Mens is an experienced salesperson, is currently employed, and there is no reason to infer that that the Contract imposes an undue hardship. In short, no evidence suggests that there is an inequality in bargaining power between Mens and Farm Credit. For these reasons, the evidence at this stage does not show that the Contract is unduly harsh.

Based on the evidence before the Court at this stage, the Contract is valid and enforceable. The Nebraska Supreme Court has specifically stated that a covenant not to compete is valid where it restricts a former employee "from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and had personal contact." *Professional Bus.*, 589 N.W.2d at 831 (citation omitted). Recently, the Nebraska Supreme Court held that a restrictive covenant like the one Mens signed was valid and enforceable. Specifically, it provided that for two years a former employee could not:

> solicit, sell to, divert, serve, accept or receive insurance agency, brokerage or consulting business . . . from any customer or active prospect of [Aon] which [employee] personally, alone or in combination with others, handled, serviced or solicited at any time during the two (2) year period immediately preceding termination of your employment.

*Aon Consulting*, 748 N.W.2d at 645, 644. Because the Contract contains this precise language, and because the factors discussed above favor enforceability, the Court is satisfied at this stage that the Contract is valid and enforceable.

### 2. Mens's Breach of the Contract

The evidence submitted at the hearing demonstrates that since her employment terminated, Mens has persuaded at least four Customers with whom she did business and had personal contact at Farm Credit to cancel their Crop Insurance through Farm Credit and purchase Crop Insurance through FBN. While the Court will permit Mens to

8

submit additional evidence and briefing, the Court is satisfied that, at this stage, Farm Credit is likely to show success on the merits.

### B. Threat of Irreparable Harm

"To succeed in demonstrating a threat of irreparable harm, 'a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" *Roudachevski v. All–Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996)). Sufficient showing on this second factor in the *Dataphase* analysis can be made, for example, by showing that the movant has no adequate remedy at law. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994). Further, this Court has held that "[l]oss of intangible assets such as reputation and goodwill can constitute irreparable injury." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F.Supp. 2d 970, 978 (D. Neb. 2008); *see also United Healthcare Ins. Co. v. Advance PCS*, 316 F.3d 737, 741 (8th Cir. 2002); *Medicine Shoppe Intern., Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003). Courts in this circuit have recognized the threat of irreparable harm under similar circumstances. *See Hilliard v. Clark*, No. 1:07-CV-811, 2007 WL 2589956, at *9 (W.D. Mich. Aug. 31, 2007) (finding irreparable harm where "there was no way to calculate how much the various client portfolios might have grown if they were not transferred, what assets the clients may have earned, inherited or won over time, or what potential referrals transferring clients might have made.")

Farm Credit has demonstrated at this stage that there is no adequate remedy at law for Mens's alleged breach of the Contract. Because of the approaching deadline for placement of crop insurance, and the nature of the crop insurance industry, it would be

9

difficult to identify how much crop insurance business Farm Credit has lost and may lose in the future due to Mens's alleged breach. Because the harm resulting from Mens's actions is not easily remedied or quantified, Farm Credit has adequately demonstrated a threat of irreparable harm.

### C. Balance of the Harms

The primary question when issuing a preliminary injunction is whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. To determine the harms that must be weighed, the Eighth Circuit has looked at the threat to each of the parties' rights that would result from granting or denying the injunction. *Baker Elec. Co-op.*, 28 F.3d at 1473. A Court also must consider the potential economic harm to each of the parties and to interested third parties. *Id.*

At this stage, Farm Credit has demonstrated that it either has been or will be harmed in a way that is difficult to quantify. As noted, Farm Credit expended considerable resources to cultivate relationships with the Customers through Mens. Farm Credit may be deprived of a substantial benefit of its efforts should Mens continue to solicit the Customers. At this stage, Mens has not demonstrated any potential harm. The evidence suggests that there is no dearth of potential customers and Mens is an experienced and successful salesperson. Accordingly, the balance of harms weighs in favor of issuance of a preliminary injunction, which may be modified or lifted at a later date, after Mens has submitted her brief and any evidence she may wish to present to rebut Farm Credit's allegations and evidence.

### D. Public Interest

The Court concludes that the public interest favors issuance of a preliminary injunction. Courts have held that the public interest favors a fair, competitive marketplace. *See e.g. Minnesota Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 943 F. Supp. 1117, 1134 (D. Minn. 1996), *aff'd sub nom. Minnesota Min. & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305 (8th Cir. 1997). Mens could potentially gain an unfair advantage with a competitor using the information and resources provided to her by Farm Credit. The public interest here is best served by enforcing the Contract.

## II. Motion for Expedited Discovery

At the hearing, Farm Credit agreed that if a preliminary injunction were to issue, there would be no need for expedited discovery. Because the Court finds that the *Dataphase* factors favor a preliminary injunction, expedited discovery is unnecessary. Accordingly, Farm Credit's motion will be denied as moot.

## CONCLUSION

For the reasons stated, the Court concludes that the Dataphase factors favor issuance of a preliminary injunction. The Court will enter a preliminary injunction subject to the parties' briefing schedule agreed upon at the hearing. Accordingly,

IT IS ORDERED:

1. The Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 4, filed by Plaintiff Farm Credit Services of America, FLCA, is granted, as follows:

Pending resolution of this matter, Mens and those acting in active concert or participation with her:

a.  shall not call on or solicit the business of, or sell to, or service (directly or indirectly), on Mens's own behalf or in association with or on behalf of any other individual or entity, including without limitation her employer FBN Insurance LLC (FBN), any of the customers of Farm Credit with whom Mens actually did business and had personal contact while employed by Farm Credit, except to the extent such activities are unrelated to and not competitive with the business, products, or services that Mens offered or provided on behalf of Farm Credit and cannot adversely affect Farm Credit's relationship or volume of business with such customers; and

b.  shall not call on or solicit the business of, or sell to, or service (directly or indirectly, on Mens's own behalf or in association with or on behalf of any other individual or entity, including without limitation her employer FBN, the persons or entities listed on the attached Exhibit A, except to the extent such activities are unrelated to and not competitive with the business, products or services that Mens offered or provided on behalf of Farm Credit and cannot adversely affect Farm Credit's relationship or volume of business with such customers. Such restrictions include refraining from issuing crop insurance quotes or working in the AIP systems on their policies or databases.

2. Farm Credit shall post a $1,000.00 cash bond with the Clerk of Court in support of this preliminary injunction;

3. Exhibit A, introduced at the hearing, is received only for purposes of Farm Credit's Motion for Preliminary Injunction and the Clerk of Court is instructed to File Exhibit A under restricted status;

4. On or before February 8, 2019, Defendant Kathy Mens may file a brief in opposition to Farm Credit's Motion for Preliminary Injunction and on or before February 18, 2019, Farm Credit may file a reply to Mens's opposition, if any; and

5. The Motion for Expedited Discovery, ECF No. 6, is denied as moot.

Dated this 18th day of January, 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge